UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GLEN PACE                                                            PLAINTIFF

V.                                    CIVIL ACTION NO. 3:22-CV-685-KHJ-MTP

CIRRUS DESIGN CORPORATION, et al.                        DEFENDANTS

ORDER

Before the Court are Defendants Cirrus Design Corporation and Apteryx,

Inc.'s [75, 155] Motions for Sanctions Pursuant to 28 U.S.C. § 1927 against Plaintiff

Glen Pace's counsel, Wayne E. Ferrell, Jr. For the reasons stated below, the Court

denies both [75, 155] Motions, but it imposes a $15,000 penalty on Ferrell sua

sponte as sanctions for violating Federal Rule of Civil Procedure 11(b)(2).

I.       Background

The procedural history of this personal-injury case has been well chronicled

across 5 opinions in 2 courts spanning 102 pages.[1] The Court now recites the factual

litany for the sixth time.

In November 2019, Pace suffered injuries from an airplane crash that

happened in Texas while he was flying a Cirrus aircraft. *Pace IV*, 93 F.4th at 887.

---

[1] *Pace v. Cirrus Design Corp.* (*Pace I*), 630 F. Supp. 3d 821, 823–24 (S.D. Miss. 2022), *aff'd*, 93 F.4th 879 (5th Cir. 2024); *Pace v. Cirrus Design Corp.* (*Pace II*), 636 F. Supp. 3d 714, 718–20 (S.D. Miss. 2022), *aff'd*, 93 F.4th 879; *Pace v. Cirrus Design Corp.* (*Pace III*), No. 3:22-CV-685, 2023 WL 5624074, at *1–2 (S.D. Miss. Aug. 10, 2023), *aff'd in part, rev'd in part*, No. 23-60465, 2024 WL 2817567 (5th Cir. June 3, 2024) (per curiam), *remanded to* No. 3:22-CV-685 (S.D. Miss. June 25, 2024); *Pace v. Cirrus Design Corp.* (*Pace IV*), 93 F.4th at 887–88; *Pace v. Cirrus Design Corp.* (*Pace V*), 2024 WL 2817567, at *1–2.

Being a Mississippi resident, Pace sued four out-of-state defendants—Cirrus, Continental Aerospace Technologies, Inc., AmSafe, Inc., and Apteryx—in Mississippi state court in November 2021. *Id.* He then added two Mississippi citizens, Wade Walters and Performance Aviation, LLC, to his suit in January 2022. *Id.* at 888. The out-of-state defendants removed the case to the U.S. District Court for the Southern District of Mississippi in April 2022. *Id.*

Pace moved to remand, and the district court denied the motion, finding that it had diversity jurisdiction because Pace had improperly joined Walters and Performance Aviation. *Pace I*, 630 F. Supp. 3d at 827. Shortly after, Pace asked for leave to file a second amended complaint, naming five new out-of-state defendants. *Pace III*, 2023 WL 5624074, at *1. On October 24, 2022, the court dismissed the case for lack of personal jurisdiction over the out-of-state defendants and mooted Pace's request to file his second amended complaint. *Pace II*, 636 F. Supp. 3d at 727. Pace filed a notice of appeal. *See Pace III*, 2023 WL 5624074, at *1.[2]

On November 21, 2022, twenty-eight days after the dismissal of his first action (and while it was on appeal), Pace filed a second action in Mississippi state court, suing the same defendants on the same facts. *Id.* at *2. The only meaningful difference between Pace's first and second actions was the addition of five new out-of-state defendants. *Id.* at *2, *13; *see also Pace V*, 2024 WL 2817567, at *1.[3]

---

[2] The Fifth Circuit affirmed in February 2024. *Pace IV*, 93 F.4th at 903.

[3] Pace's complaint in his second action was substantively the same as the second amended complaint that he had sought leave to file in his first action. *Compare* [1-1] at 4–45, *and* [1-2] at 1–26, *with* Notice of Filing Correct Exhibit to Doc. No. 118, *Pace II*, 636 F. Supp. 3d 714 (No. 2:22-CV-46), ECF No. 119.

Continental removed the second action to this Court, reasserting that Pace had improperly joined the only Mississippi citizens in the case—Walters and Performance Aviation. *Pace III*, 2023 WL 5624074, at *2.

Pace moved to remand again. *Id.*; Mot. Remand [8]. The Court found that he was precluded from relitigating the improper joinder issue. *Pace III*, 2023 WL 5624074, at *3–5. It also precluded him from relitigating the personal jurisdiction issue against the four original defendants. *Id.* at *5–6. As for the five new defendants, the Court dismissed Pace's claims against them for either lack of personal jurisdiction or failure to prosecute. *Id.* at *7, *9–12.

Appealing again, Pace argued that the Court erred by precluding him from relitigating the improper joinder and personal jurisdiction issues. *See Pace V*, 2024 WL 2817567, at *1. The Fifth Circuit rejected both of Pace's arguments because it had affirmed in *Pace IV* that Walters and Performance Aviation were improperly joined and that no personal jurisdiction existed over the four original defendants. *Id.* at *2 (citing *Pace IV*, 93 F.4th at 894, 898–902). The court noted that Pace's personal jurisdiction arguments were "mere duplications of the ones" that had "been expressly rejected by [the] published decision" in *Pace IV. Id.* at *4.

During this case, Cirrus and Apteryx moved the Court to impose sanctions on Pace's counsel, Ferrell, under Section 1927 for filing this duplicative lawsuit while his first action was still on appeal. [75]; [155]. In its [151] Order dismissing this second action, the Court ordered Ferrell to show cause as to why he should not be sanctioned under Section 1927 or Rule 11. *Pace III*, 2023 WL 5624074, at *14; *see*

*also* Fed. R. Civ. P. 11(c)(3). The Court highlighted the "excessive costs and attorney[s'] fees incurred by the [d]efendants involved in" the first action "in having to defend this second and duplicative action." *Pace III*, 2023 WL 5624074, at *14.

The [151] Order noted that "the only material difference between" Pace's two lawsuits was "the addition of five more [d]efendants." *Id.* at *13. And it spelled out the similarities between this case and another in which a district court sanctioned a party under Rule 11 for filing a duplicative lawsuit, though the court in that case later rescinded the sanction on a motion for reconsideration. *Id.* at *13–14, *14 n.5 (citing *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, No. 3:16-CV-1112, 2017 WL 1078525 (N.D. Tex. Mar. 22, 2017), *aff'd*, 714 F. App'x 1021 (Fed. Cir. 2018) (mem.) (per curiam)); *see also* Order, *New World*, 2017 WL 1078525 (No. 3:16-CV-1112), ECF No. 92 (imposing sanctions) [hereinafter Order [92], *New World*]; Order, *New World*, 2017 WL 1078525 (No. 3:16-CV-1112), ECF No. 100 (rescinding sanctions).

In fact, the Court highlighted that the conduct here was worse than in *New World* because this case involved more defendants. *Pace III*, 2023 WL 5624074, at *14 & n.5. The four out-of-state defendants were required "to not only file responses to [Pace's] motions to remand and to stay but also to file their own dispositive motions, and replies in support of their motions" in Pace's first action. *Id.* Their counsel "spent considerable time, at likely significant expense to [the d]efendants, in drafting those documents and performing other tasks related to defending this

action . . . ." *Id.* At the time of the Court's [151] Order, the docket had 150 entries

and 11 pending motions. *Id.*[4]

Responding to the [75, 155] Motions for Sanctions and the Court's [151]

Order, Ferrell defended his conduct on various grounds:

- He "had a good faith basis [to believe] that Cirrus opened a new Authorized Service Center in Madison, Mississippi, on June 27, 2022, which created a new jurisdictional fact for the Court's consideration." Resp. Show Cause Order [159] at 8; Resp. Apteryx's Mot. Sanctions [164] at 20–22.

- He "alleged new claims against Defendants based on Section 388 of the Restatement (2nd) of Torts," creating a new subject-matter jurisdiction issue for the Court to consider. Resp. Cirrus's Mot. Sanctions [128] at 8.

- He had "a right to bring a second suit on claims [that] were denied in his motion to amend" because that motion was not denied on the merits. *Id.* (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000)).

- He was entitled to "maintain parallel litigation in both state and federal court" because this case was improperly removed. *Id.* (citing *Jett v. Zink*, 474 F.2d 149, 155 (5th Cir. 1973)).

- He filed this second action in state court, but Cirrus and Apteryx were at fault for removing the case. [164] at 5–7, 15, 17.

- He should not be sanctioned because Apteryx's [155] Motion for Sanctions was untimely. *Id.* at 4.

- He had to file this action because the statute of limitations would have run on Pace's claims after leave to amend was denied in the first action. *Id.* at 8–9.

- He should not be sanctioned because the law surrounding the permissibility of claim splitting was unsettled. *Id.* at 9–15.

- He should not be sanctioned because the Court made him respond to the defendants' motions to dismiss without ruling on his [8] Motion to Remand or Cirrus's [72] Motion to Stay. *Id.* at 16, 18–20.

---

[4] All this came on the heels of extensive litigation in Pace's first action: that docket had 132 entries at the time. *See* Civil Docket, *Pace II*, 636 F. Supp. 3d 714 (No. 2:22-CV-46).

The Court deferred its ruling on the [75, 155] Motions for Sanctions until the Fifth Circuit reviewed Pace's then-pending second appeal. Order [168]. The Fifth Circuit's decision came in *Pace V.* 2024 WL 2817567. The Motions are now ripe for review.

II.    Standard

A.  Section 1927

Under Section 1927, the Court may require an "attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously" to personally satisfy "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." § 1927. The Court must find the multiplication of proceedings both "unreasonable" and "vexatious." *Vaughan v. Lewisville Indep. Sch. Dist.*, 62 F.4th 199, 207 (5th Cir. 2023). When sanctions are awarded, they require clear and convincing evidence "of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Laws. Title Ins. v. Doubletree Partners, L.P.*, 739 F.3d 848, 871–72 (5th Cir. 2014) (cleaned up). Courts may support sanctions by proof of excessive litigiousness, such as repeated filing despite warnings from the court. *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002). Because Section 1927 is punitive, courts construe the statute in the sanctioned party's favor, and sanctions are only "sparingly applied." *Vaughan*, 62 F.4th at 207 (cleaned up).

Imposing sanctions also demands "detailed factual findings . . . ." *Id.* (cleaned up). Only when the Court makes the requisite findings, may it award the costs and fees against counsel that are related to the repeated litigation of a meritless claim. *Id.* Shifting all the litigation costs requires clear and convincing evidence that (1)

"every facet of the litigation was patently meritless"; (2) counsel "lacked a reason to file the suit"; and (3) counsel wrongfully "persisted in its prosecution through discovery, pre-trial motions, and trial." *Procter & Gamble*, 280 F.3d at 525.

B.  Rule 11

Under Rule 11, attorneys certify that their pleadings and motions are not filed for "any improper purpose" and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for" changing the law. Fed. R. Civ. P. 11(b). In other words, attorneys must conduct "a reasonable inquiry" to determine "that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Cordova v. Univ. Hosp. & Clinics, Inc.*, 92 F.4th 266, 273 (5th Cir.) (cleaned up), *cert. denied sub nom. Mire v. Univ. Hosp. & Clinics, Inc.*, 144 S. Ct. 2608 (2024) (mem.). Improper purposes include harassment, causing unnecessary delay, or needlessly increasing the cost of litigation. Fed. R. Civ. P. 11(b)(1). Courts judge an attorney's conduct under an objective standard of reasonableness that focuses on the moment the attorney signs the document. *Cordova*, 92 F.4th at 273. To impose Rule 11 sanctions, a court must (1) announce the sanctionable conduct, (2) connect the conduct to the sanction, (3) consider whether the non-violating party mitigated any requested expenses, (4) and craft the least severe sanction needed to achieve the purposes of Rule 11. *Topalian v. Ehrman*, 3 F.3d 931, 936–37 (5th Cir. 1993).

Rule 11 sanctions can be imposed by motion or on a court's own initiative. Fed. R. Civ. P. 11(c)(2)–(3). A court's imposition of sanctions on its own initiative

requires it to first issue a show-cause order, providing notice and an opportunity to explain why the conduct does not violate Rule 11(b). *Id.* 11(c)(1), (3), (5)(B). Such sanctions are limited to nonmonetary sanctions or a penalty payable to the court. *Id.* 11(c)(4); *Marlin v. Moody Nat'l Bank, N.A.*, 533 F.3d 374, 379 (5th Cir. 2008). Reasonable attorneys' fees may be awarded under Rule 11 only if the sanction is imposed on motion. Fed. R. Civ. P. 11(c)(4); *Marlin*, 533 F.3d at 379. Any sanction imposed should be the least severe that furthers the deterrence purposes of Rule 11. *Jenkins v. Methodist Hosps. of Dall., Inc.*, 478 F.3d 255, 265 (5th Cir. 2007). When presented with conduct that violates both Rule 11 and Section 1927, a court has the discretion to sanction under either provision, or both. *Travelers Ins. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1418 (5th Cir. 1994).

III.    Analysis

The Court considers each of Ferrell's nine arguments against the imposition of sanctions. Finding each meritless, the Court then considers Cirrus and Apteryx's [75, 155] Motions for Sanctions under Section 1927 and evaluates whether Ferrell violated Rule 11. Under these circumstances, the Court finds that Ferrell violated Rule 11(b)(2), and so Rule 11 sanctions are appropriate.

A.  New Personal Jurisdiction Allegations

First, Ferrell contends that he "had a good faith basis [to believe] that Cirrus opened a new Authorized Service Center in Madison, Mississippi, on June 27, 2022." [159] at 8; [164] at 20–22. Ostensibly, Ferrell argues that this new jurisdictional fact would have presented a different personal-jurisdiction issue than

the one decided in *Pace II*. But this argument fails because Ferrell's new fact is irrelevant to personal jurisdiction, so it cannot present a new issue.

Jurisdictional rulings have an issue-preclusive effect, barring "relitigation of the same jurisdictional *issue* decided in a prior case." *Bank of La. v. FDIC*, 33 F.4th 836, 838 (5th Cir. 2022). If the jurisdictional defect is later corrected, the suit can be refiled. *Id.* But when the jurisdictional facts have not changed, the later suit presents the same jurisdictional issue as the prior suit. *Id.* When assessing general jurisdiction, courts evaluate a defendant's contacts with the forum "over a reasonable number of years, up to the date the suit was filed." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008) (cleaned up). Specific jurisdiction requires that "the suit arise out of or relate to the defendant's contacts with the forum." *Pace IV*, 93 F.4th at 900 (cleaned up).

Ferrell claims that Cirrus opened a new service center in Mississippi on June 27, 2022. [159] at 8. He filed Pace's first action on November 19, 2021. State Court Complaint, *Pace II*, 636 F. Supp. 3d 714 (No. 2:22-CV-46), ECF No. 1-4. Assuming the service center constitutes a contact between Cirrus and Mississippi, it cannot contribute to general jurisdiction because the first action was filed before the service center opened.[5] And the airplane crash occurred on November 22, 2019. *Pace IV*, 93

---

[5] The relevant cutoff for general-jurisdiction contacts is the filing of Pace's first action, not his second. The rule against claim splitting prevents Pace from filing "duplicative complaints to expand the procedural rights he would otherwise enjoy." *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985). Courts do not consider post-complaint contacts when analyzing general jurisdiction. *Johnston*, 523 F.3d at 610. Had Ferrell "amended [the] initial complaint to" allege facts about the new service center, "this amendment would have related back to the initial filing." *Oliney*, 771 F.2d at 859. Thus, the district court in *Pace II* would not have considered the new service center because it opened

F.4th at 887. So the service center cannot contribute to specific jurisdiction because the crash could not have related to a contact that did not exist in 2019.

Moreover, even if Ferrell believed that the service center could subject Cirrus to personal jurisdiction in Mississippi, he still sued the three other out-of-state defendants—Continental, AmSafe, and Apteryx—without alleging any substantively new bases for personal jurisdiction over them. *Compare* [1-1] ¶¶ 3, 5, 7, 10, *with* State Court Amended Complaint ¶¶ 3, 5, 7, *Pace II*, 636 F. Supp. 3d 714 (No. 2:22-CV-46), ECF No. 1-5. Ferrell fails to explain how his argument about new jurisdictional facts regarding Cirrus could possibly confer personal jurisdiction over the other three defendants.

B. New Subject-Matter Jurisdiction Allegations

Ferrell next argues that this second action was not duplicative because he "alleged new claims . . . based on Section 388 of the Restatement (2nd) of Torts" against Walters and Performance Aviation—the Mississippi citizens. [128] at 8. This argument fails because the district court dismissed the first action against the four out-of-state defendants for lack of personal jurisdiction. Adding new claims against the in-state defendants cannot cure the lack of personal jurisdiction over the out-of-state defendants, so it cannot justify filing a second lawsuit in Mississippi.

While Ferrell does not fully explain his argument, the Court surmises it: Since the first action was dismissed without prejudice, Ferrell argues that he was

---

after the initial complaint was filed. *See id.* Likewise, Ferrell could not circumvent this temporal restriction by filing a duplicative suit after the service center opened. *See id.* If Ferrell wanted to allege new general-jurisdiction facts, he should "have waited until final judgment had been rendered in his first suit and the appeal dismissed . . . ." *Id.*

free to file a second lawsuit realleging the same claims and adding claims against Walters and Performance Aviation. *See id.* Assuming the new claims would have cured the improper joinder issue, the case could have proceeded anew in state court. *See id.* But this argument ignores that the first action was dismissed for lack of personal jurisdiction.

Even if the new claims did cure the improper joinder issue, they would not justify refiling this suit in Mississippi against the four out-of-state defendants. The *Pace II* court had already decided that Mississippi courts have no personal jurisdiction over those defendants. *Pace II*, 636 F. Supp. 3d at 727. Accordingly, even if this action had remained in state court, issue preclusion would have still barred Pace from relitigating the personal-jurisdiction issue in that forum. *See Bank of La.*, 33 F.4th at 838; *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) (noting that prior federal court determinations about personal jurisdiction have preclusive effect in subsequent state court actions); *ASARCO, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 & n.2 (5th Cir. 1990) (same).

C.  Right to File Proposed Amended Complaint as New Action

Ferrell's third argument—that he had "a right to bring a second suit on claims th[at] were denied in his motion to amend"—fails for the same reason as his second. [128] at 8. Mississippi courts do not have personal jurisdiction over the out-of-state defendants. *Pace II*, 636 F. Supp. 3d at 727; *Pace IV*, 93 F.4th at 902; *Pace V*, 2024 WL 2817567, at *2. Thus, any suit related to the 2019 crash that Ferrell brings against them in Mississippi is precluded on jurisdictional grounds in the

absence of changed facts. *See Bank of La.*, 33 F.4th at 838. The jurisdictional facts did not change between the first and second actions.

Even if Ferrell could have believed that his new factual allegations would establish personal jurisdiction over Cirrus, he did not have a right to maintain a second lawsuit against the four out-of-state defendants after being denied leave to amend in the first action. *Ameritox, Ltd. v. Aegis Scis. Corp.*, No. 3:08-CV-1168, 2009 WL 305874, at *5 (N.D. Tex. Feb. 9, 2009) (collecting cases). The rule against claim splitting prevents him from suing the out-of-state defendants again while maintaining an appeal against them in the first action. *See Armadillo Hotel Grp., L.L.C. v. Harris*, 84 F.4th 623, 628 (5th Cir. 2023). Recognizing this, Ferrell relies on a distinguishable case to argue that he could bring a new suit because the district court did not deny his motion to amend the first action's complaint on the merits. [128] at 8 (quoting *Curtis*, 226 F.3d at 139).

Claim splitting occurs when "a plaintiff files a second complaint alleging the same cause of action as a prior, *pending*, related action . . . ." *Oliney*, 771 F.2d at 859. The rule against claim splitting prohibits a plaintiff or its privies from prosecuting simultaneous lawsuits over the same claim against the same defendants. *Armadillo Hotel Grp.*, 84 F.4th at 628. Instead, a plaintiff must generally "raise all claims arising out of one transaction in a single suit." *Nilsen v. City of Moss Point*, 701 F.2d 556, 562 (5th Cir. 1983) (en banc). This rule mainly protects defendants from being harassed by repeated lawsuits concerning the same claim. *Armadillo Hotel Grp.*, 84 F.4th at 628. But it is also a matter of docket

management, and courts often use the rule against claim splitting to prevent a plaintiff from filing a new lawsuit after its request to amend a complaint in an earlier case has been denied. *See Friends of the Earth, Inc. v. Crown Cent. Petrol. Corp.*, 95 F.3d 358, 362 (5th Cir. 1996); *see also Ameritox*, 2009 WL 305874, at *5.

Because claim splitting occurs before a final judgment on the merits is rendered in the prior action, the Fifth Circuit's claim-splitting test is an abridged version of the traditional claim-preclusion test. *See Armadillo Hotel Grp.*, 84 F.4th at 628. Thus, the claim-splitting analysis focuses only on (1) "whether the parties are the same or in privity" and (2) "whether the same claim or cause of action is involved in both suits." *Id.* (cleaned up). When deciding whether two lawsuits present the same claim or cause of action, the Fifth Circuit uses the transactional test. *Id.* It looks to "whether the two actions were based on the same nucleus of operative facts" as determined by "the factual predicate of the claims asserted" rather than the plaintiff's legal theories. *Id.* (cleaned up).

Ferrell's filing of this second lawsuit violated the rule against claim splitting. This is not the typical claim splitting case because final judgment was rendered in the first action. *Pace II*, 636 F. Supp. 3d at 727. But Ferrell was still prosecuting the first action on appeal when he filed this second action. *Pace V*, 2024 WL 2817567, at *1; *see Oliney*, 771 F.2d at 859 ("If appellant desired to file a second suit[,] . . . [he] could have waited until final judgment had been rendered in his first suit *and the appeal dismissed* before filing a second suit" (emphasis added)). Claim splitting—rather than claim preclusion—is also more applicable here because the final

judgment, a jurisdictional dismissal, was not on the merits. *Pace V*, 2024 WL 2817567, at *2. In any case, the elements of claim splitting are present. Ferrell maintained the first and second actions at the same time, *see id.* at *1–2; Pace sued the same four defendants in both actions, *see id.*; and the two actions are based on the same nucleus of operative facts, the November 2019 plane crash, *see id.*

When the district court denied Ferrell leave to amend the first action's complaint, he filed those amendments as this case while the first was still on appeal. *See supra* note 2. The rule against claim splitting "finds particular application where . . . the plaintiff files the second complaint to achieve procedural advantage by circumventing the rules pertaining to the amendment of complaints." *Friends of the Earth*, 95 F.3d at 362 (cleaned up); *see also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) ("When a district court dismisses an action and enters a final judgment, . . . a plaintiff may request leave to amend only by either appealing the judgment[] or seeking to alter or reopen the judgment under Rule 59 or 60."). Rather than re-seeking leave to amend on appeal or within the strictures of Rules 59 or 60, Ferrell sued all four out-of-state defendants again, knowing that he lacked a jurisdictional basis to hale them into court in Mississippi.

In response, Ferrell argues that—since his motion to amend was not denied on its merits—he was entitled to file the amended complaint as a new lawsuit. [128] at 8. Ferrell quotes a Second Circuit case, *Curtis:* "Only a 'denial of leave to amend *on the merits* precludes subsequent litigation of the claims in the proposed amended complaint.'" *Id.* (quoting *Curtis*, 226 F.3d at 139).

*Curtis* is distinguishable. That case involved plaintiffs who tried to amend their complaint by adding a claim that arose after they filed their lawsuit. *Curtis*, 226 F.3d at 137–38. "Claim preclusion generally does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 414 (2020) (cleaned up). The plaintiffs in *Curtis* wished to add a new claim to an existing lawsuit, but they were also entitled to bring that claim in a new lawsuit. *See* 226 F.3d at 140. Accordingly, that claim would only have been precluded if the denial of leave to amend operated as a final judgment on the merits. *See id.* at 139.

By contrast, Ferrell did not seek to add a new claim to an existing lawsuit. He wanted to add new legal theories to the first action's complaint, but those new theories all concerned the same claim arising from the November 2019 plane crash. *See* [1-1] at 4–45; [1-2] at 1–26. Thus, Ferrell was never entitled to bring those theories in a separate lawsuit because they arose from the same transaction underlying Pace's first action. *See Oliney*, 771 F.2d at 859. If Ferrell wanted to bring those new theories, he had to do so by amending the first action. *Friends of the Earth*, 95 F.3d at 362. He did not have the right to circumvent the denial of his motion for leave to amend in the first action by filing a second action. *See id.*

### D.  Right to Maintain Parallel Litigation in State and Federal Court

Ferrell next argues that his filing of this second suit was justified because he could "maintain parallel litigation in both state and federal court." [128] at 8 (citing *Jett*, 474 F.2d at 155). According to Ferrell, this suit was improperly removed and

should have remained in state court. *Id.* If this suit had remained in state court, then it would not have been vexatious because parallel state and federal litigation is allowable. *Id.* This argument fails because it is counterfactual and, therefore, irrelevant. Regardless of whether Ferrell believes that this suit should have remained in state court, it did not.

Four decisions have found that federal subject-matter jurisdiction existed over Pace's first and second actions. *Pace I*, 630 F. Supp. 3d at 824, 827; *Pace III*, 2023 WL 5624074, at *3–5; *Pace IV*, 93 F.4th at 894; *Pace V*, 2024 WL 2817567, at *2. Thus, Ferrell's argument about maintaining parallel state and federal litigation is irrelevant because that did not happen. Ferrell did not maintain one suit in federal court and one in state court. Instead, he ultimately maintained two suits in federal court, even if he would have preferred to be in state court.

E.  Cirrus and Apteryx's Removal of this Action

In several places, Ferrell argues that the fault lies with Cirrus and Apteryx for any duplicative litigation because the defendants removed this case to federal court. [164] at 5–7, 15, 17. He claims that—if his conduct is sanctionable—Cirrus and Apteryx are "equally guilty." *Id.* at 15.

The Court sees no fault in the defendants' removal of this action. Absent exceptional circumstances, a federal "court with jurisdiction has a virtually unflagging obligation to hear and resolve questions properly before it." *FBI v. Fikre*, 601 U.S. 234, 240 (2024) (cleaned up). Cirrus and Apteryx were within their rights to invoke this Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. And the Fifth

Circuit found that diversity jurisdiction did exist over both Pace's first action and this one. *Pace IV*, 93 F.4th at 894; *Pace V*, 2024 WL 2817567, at *2. The removal of this case does not excuse the re-filing of this lawsuit in Mississippi without a basis for personal jurisdiction over the four out-of-state defendants.

F.  Timeliness of Apteryx's [155] Motion for Sanctions

Ferrell specifically contests Apteryx's [155] Motion for Sanctions as untimely because Apteryx filed the Motion nine months after the second action was filed. [164] at 4. To support this proposition, Ferrell relies on two Third Circuit cases discussing that circuit's supervisory rule generally requiring the imposition of Rule 11 or inherent-power sanctions before final judgment. *See id.* The Third Circuit's supervisory rules, however, do not bind this Court.

The Fifth Circuit has not adopted a similar rule, though it has recognized that parties cannot serve motions for Rule 11 sanctions after final judgment because of Rule 11's "safe harbor" provision. *Margetis v. Furgeson*, 666 F. App'x 328, 332 & n.5 (5th Cir. 2016) (per curiam). Section 1927 does not contain a time limit or safe harbor provision, and the Fifth Circuit has not implied one. *See Ratliff v. Stewart*, 508 F.3d 225, 231–32 (5th Cir. 2007). The Court's collateral jurisdiction permits it to award attorneys' fees and costs under Section 1927, even when a party applies for those fees several years after final judgment. *Id.* at 232. Here, Apteryx filed its [155] Motion for Sanctions 19 days after the Court entered final judgment. Reply Resp. Opp'n Mot. Sanctions [167] at 2. So Ferrell's timeliness argument fails.

G. Running of the Statute of Limitations

Next, Ferrell contends that he filed this action to prevent the statute of limitations from running on Pace's claims against the original defendants. [164] at 8–9. The Fifth Circuit has found Section 1927 sanctions unwarranted where an attorney filed duplicative claims against a party in state court while also suing that party in federal court. *Ayala v. Enerco Grp., Inc.*, 569 F. App'x 241, 243–44, 250–51 (5th Cir. 2014) (per curiam). The attorney there also argued that he had to file a second action to prevent his client from forfeiting certain claims. *Id.* at 250. While the attorney's belief was mistaken, the court held that his error was not enough to warrant sanctions without evidence of persistent prosecution. *Id.* at 250–51.

This case differs from *Ayala* because Ferrell filed suit in Mississippi again despite lacking a basis for personal jurisdiction, and he prosecuted this second action all the way to an appeal. The attorney in *Ayala* was not already on notice that his entire second suit would be jurisdictionally barred. Ferrell was. If Ferrell had reasserted his claims against the four out-of-state defendants in a forum possessing personal jurisdiction, then his conduct may have been proper. But this suit was unreasonable and vexatious because Ferrell sought to file a second action relitigating the exact issue of personal jurisdiction decided in the first action. If he disagreed with the first action's dismissal, Ferrell should have filed a Rule 59(e) motion, waited for the Fifth Circuit to review the issue on appeal, or filed a new action in a forum with personal jurisdiction.

H. The State of the Law on Claim Splitting

Ferrell contends that the Court should not sanction him because the law on claim splitting is unsettled. [164] at 10. He cites a Mississippi Supreme Court case for the proposition that the rule against claim splitting does not apply when more defendants are added to the subsequent action. *Id.* at 11–13 (citing *Warrington v. Watkins & Eager, PLLC*, 371 So. 3d 1277 (Miss. 2023) (en banc)). Mississippi's rule against claim splitting is similar to the Fifth Circuit's. *See Carpenter v. Kenneth Thompson Builder, Inc.*, 186 So. 3d 820, 824 (Miss. 2014) (en banc) ("Plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." (cleaned up)). But *Warrington* is distinguishable. In *Warrington*, the plaintiff voluntarily dismissed his first action shortly after filing a second action, which asserted the same claims against additional defendants. 371 So. 3d at 1279. The court held that this was not claim splitting because the plaintiff did not maintain simultaneous actions. *Id.* at 1283.

Here, Ferrell maintained two simultaneous suits against the four original defendants over the same claim. The law is settled enough to deem Ferrell's actions improper. *See Oliney*, 771 F.2d at 859.

I. Court's Deferral of Ruling on Pace's [8] Motion to Remand and Cirrus's [72] Motion to Stay

Ferrell states that sanctions are unwarranted because the Court did not immediately rule on his [8] Motion to Remand or stay the case on Cirrus's [72] Motion to Dismiss or Stay. [164] at 16, 18–20. This, he contends, caused Cirrus and Apteryx to incur unnecessary attorneys' fees. *See id.* at 16. While Ferrell did not

object to staying the case pending his first appeal, he wished this case stayed only after the Court ruled on his [8] Motion to Remand. [129] at 57.[6] To preserve judicial economy, the Court ruled on the [8] Motion to Remand and the remaining motions to dismiss at once. *Pace III*, 2023 WL 5624074, at *5, *12. To accomplish this, the Court required full briefing on the motions to dismiss so it could "rule expeditiously on the remaining motions" if the [8] Motion to Remand was denied. Order [93].

Staying the action also would not have obviated the need to rule on the original defendants' motions to dismiss for lack of personal jurisdiction. Unless Pace had voluntarily dismissed this case, the defendants would still have been required to file motions to dismiss asserting claim preclusion and objecting to personal jurisdiction.[7] Ferrell could have moved for voluntary dismissal when it became apparent that he was precluded from relitigating personal jurisdiction. *See, e.g.*, Cirrus's Mem. Supp. Mot. Dismiss [73] at 8–13. But when presented with the out-of-state defendants' motions to dismiss, he opposed them all. Resp. Opp'n Continental's Mot. Dismiss [119]; Resp. Opp'n Cirrus's Mot. Dismiss [129]; Resp. Opp'n AmSafe's Mot. Dismiss [133]; Resp. Opp'n Apteryx's Mot. Dismiss [140].

---

[6] Ferrell took this position because he believed that the Court could not dismiss the case for lack of personal jurisdiction unless it had subject-matter jurisdiction. [55] at 4. The Supreme Court foreclosed this position 25 years ago. *See Ruhrgas AG*, 526 U.S. at 585.

[7] Claim preclusion is an affirmative defense, and parties can consent to personal jurisdiction. *Sacks v. Tex. S. Univ.*, 83 F.4th 340, 344 (5th Cir. 2023) (per curiam), *cert. denied*, 144 S. Ct. 2520 (2024); *SEC v. Stanford Int'l Bank, Ltd.*, 112 F.4th 284, 294–95 (5th Cir. 2024).

J.  Sanctions

Having considered Ferrell's arguments, the Court turns to Cirrus and Apteryx's [75, 155] Motions for Sanctions under Section 1927. While Ferrell arguably violated Section 1927, he certainly violated Rule 11, which more squarely addresses his conduct. "The decision whether to use [Section] 1927, or Rule 11, or both, is within the discretion of the district court." *Travelers*, 38 F.3d at 1418. So the Court finds that Rule 11 sanctions are more appropriate and sanctions Ferrell under that provision.

1.  Section 1927 Sanctions

To merit Section 1927 sanctions, Ferrell's conduct must have been unreasonable and vexatious. In other words, there must be evidence of "bad faith, improper motive, or reckless disregard of the duty owed to the court." *Doubletree Partners*, 739 F.3d at 871 (cleaned up). Ferrell arguably filed this suit in reckless disregard of his duty to the Court. *See id.* He was on notice from the dismissal in *Pace II* that Mississippi courts lacked personal jurisdiction over the out-of-state defendants, and he sued them again anyway. But the duty that Ferrell arguably disregarded was his Rule 11(b) duty to reasonably inquire whether his legal contentions were warranted by existing law. Fed. R. Civ. P. 11(b)(2). Because Rule 11 more appropriately addresses Ferrell's conduct, the Court declines to impose Section 1927 sanctions. Cirrus and Apteryx's [75, 155] Motions are denied.

2.  Rule 11 Sanctions

There are four factors that guide the imposition of Rule 11 sanctions. *Topalian*, 3 F.3d at 936–37.[8] First, the Court states the sanctionable conduct. *Id.* at 937. Ferrell refiled a duplicative lawsuit in Mississippi against four out-of-state defendants after a district court found that Mississippi courts had no personal jurisdiction over those defendants.[9] As explained, "elementary legal research on personal jurisdiction would have prevented this suit from being filed against" those four defendants. *Skidmore Energy, Inc. v. KPMG*, No. 3:03-CV-2138, 2005 WL 8158140, at *9 (N.D. Tex. Mar. 18, 2005), *aff'd*, 455 F.3d 564 (5th Cir. 2006).

Ferrell had a duty to reasonably inquire whether a legal basis existed for recontesting personal jurisdiction in a second lawsuit rather than on appeal. *See* Fed. R. Civ. P. 11(b)(2). But none of the reasons that Ferrell gave for filing this second suit provided a reasonable justification for doing so. His belief that the new authorized service center could convey personal jurisdiction over Cirrus in Mississippi was unreasonable and evinces a failure to reasonably inquire into the legal basis for filing this action. A reasonable inquiry would have revealed that this second action was jurisdictionally precluded. And Ferrell's failure to inquire is

---

[8] The Court does not consider the third factor, whether the non-violating parties mitigated their expenses, because Cirrus and Apteryx never moved for attorneys' fees under Rule 11. *See Marlin*, 533 F.3d at 379.

[9] Ferrell also made Cirrus and Apteryx defend an appeal following this action. In imposing sanctions, the Court does not consider any of Ferrell's appellate conduct. *See Conner v. Travis County*, 209 F.3d 794, 801 & n.5 (5th Cir. 2000) (per curiam).

inexcusable because the district court's opinion in *Pace II* even spelled out the jurisdictional defects in the case.

Likewise, the Court is highly persuaded that Rule 11 sanctions are more appropriate here because the cases most factually analogous to this one have been addressed using that provision. *See Valdez v. Kreso, Inc.*, 144 F. Supp. 2d 663, 671–72 (N.D. Tex. 2001) (imposing $6,000 Rule 11 sanctions after plaintiff filed diversity suit in Texas federal court after identical suit in Texas state court was dismissed for lack of personal jurisdiction). *Compare New World*, 2017 WL 1078525, at *10 (considering both Section 1927 and Rule 11 sanctions when plaintiff filed identical second suit after first suit was dismissed for lack of personal jurisdiction), *with* Order [92], *New World*, *supra*, at 9–10 (imposing $10,000 Rule 11 sanction).[10]

In particular, the Court notes that the facts here closely track those in *Valdez*, where the district court found Rule 11 sanctions appropriate. 144 F. Supp. 2d at 672. In *Valdez*, the plaintiff's attorney sued two defendants in Texas state court. *Id.* at 665. The defendants challenged the state court's personal jurisdiction over them. *Id.* at 665–66. After considerable litigation over the personal-jurisdiction issue, the state court dismissed the lawsuit for lack of personal jurisdiction. *Id.* at 666. Within two weeks, the plaintiff's attorney filed a second lawsuit in a Texas federal court against the same defendants and based on the same facts. *Id.*

---

[10] The plaintiff's counsel in *New World* eventually avoided sanctions. There, the attorney convinced the district court that his second suit presented a different personal-jurisdiction issue than his first suit because he alleged new jurisdictional facts that would have "made a difference on jurisdiction." *See* Motion for Reconsideration at 27, *New World*, 2017 WL 1078525 (No. 3:16-CV-1112), ECF No. 94. But Ferrell did not allege any facts here that would have made a jurisdictional difference. *See supra* Section III.A.

The defendants moved to dismiss, explaining that the plaintiff was precluded from relitigating the same issue in federal court that was decided in state court. *Id.* Rather than conceding the lack of personal jurisdiction, the plaintiff's attorney futilely opposed the motions to dismiss. *Id.* at 666–67. The district court sanctioned the attorney under Rule 11 for, among other reasons, arguing that personal jurisdiction was appropriate without a reasonable legal basis. *Id.* at 670–71.

The facts here, though inversed, are strikingly similar. Ferrell filed this action in state court after a federal court found personal jurisdiction lacking over the four out-of-state defendants. And when the defendants moved to dismiss this suit on preclusion grounds, Ferrell opposed all the motions, recycling the arguments disposed of in *Pace II*. Like the court in *Valdez*, the Court finds that "[n]o reasonable attorney would have believed . . . that the claims and legal contentions related to the theories of liability alleged in the complaint against" the four out-of-state defendants "were warranted by existing law . . . ." 144 F. Supp. 2d at 671.

The Court now considers the last two Rule 11 factors, proportionality and severity. *Topalian*, 3 F.3d at 937. The Court must connect any monetary sanctions with the sanctionable conduct and fashion the least severe sanction needed to deter repetition of the sanctionable conduct. *Id.* In the Court's estimation, the sanctions it imposes on Ferrell today are far less than the costs and attorneys' fees generated by his conduct, which would be the measures of Section 1927 sanctions. While Section 1927 sanctions are punitive, *see Procter & Gamble Co.*, 280 F.3d at 526, courts use Rule 11 sanctions to deter, educate, and rehabilitate. *Thomas v. Cap. Sec. Servs.,*

*Inc.*, 836 F.2d 866, 877 (5th Cir. 1988) (en banc). Considering Ferrell's unreasonable conduct, the Court finds the rationale behind Rule 11 sanctions more appropriate.

In determining the sanction amount, the Court is persuaded that Ferrell's conduct merits a sanction roughly in accord with those given in *Valdez* and *New World*. The courts in *Valdez* and *New World* each imposed sanctions around $10,000 for Rule 11 violations analogous to Ferrell's. *Valdez*, 144 F. Supp. 2d at 672; Order [92], *New World*, *supra*, at 10.[11] But *Valdez* involved only two defendants, and *New World*, one. *See Valdez*, 144 F. Supp. 2d at 665–66; Order [92], *New World*, *supra*, at 1–2. Ferrell's conduct locked four defendants in duplicative litigation. And again, Ferrell was on notice from the opinion in *Pace II* that Mississippi courts lacked personal jurisdiction over those defendants. Even if Ferrell believed that the court in *Pace II* ruled incorrectly, he should have understood that issue preclusion would bar him from filing an identical action. Thus, the Court concludes that a $15,000 sanction properly accounts for the number of defendants here and is the least severe sanction needed to deter comparable conduct.

IV.    Conclusion

For the reasons stated above, the Court DENIES Cirrus and Apteryx's [75, 155] Motions for Sanctions. The Court ORDERS that Wayne E. Ferrell, Jr. pay to the Clerk of the Court the sum of $15,000 as a sanction for his violation of Federal Rule of Civil Procedure 11(b). In doing so, the Court has considered all the parties'

---

[11] Adjusted for inflation, the $6,000 sanction in *Valdez* would be about $10,656 today. *CPI Inflation Calculator*, U.S. Bureau of Lab. Stats., https://www.bls.gov/data/inflation_calculator.htm [https://perma.cc/MX52-33EX].

arguments. Those arguments not addressed would not have altered the Court's decision. Ferrell shall pay the sanction in the following installments:

    (1) $3,000 is to be paid to the Clerk no later than April 15, 2025.

    (2) $3,000 is to be paid to the Clerk no later than June 15, 2025.

    (3) $3,000 is to be paid to the Clerk no later than August 15, 2025.

    (4) $3,000 is to be paid to the Clerk no later than October 15, 2025.

    (5) $3,000 is to be paid to the Clerk no later than December 15, 2025.

SO ORDERED, this 13th day of March, 2025.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE